NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-765


LOU ELLA JASON

VERSUS

ZURICH AMERICAN INSURANCE COMPANY, ET AL.


**********


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-0394-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Elizabeth Smyth Rambin**
**Comeaux, Stephens & Grace**
**One Lakeway Center**
**3900 North Causeway Boulevard, Suite 1060**
**Metairie, Louisiana  70002**
**(504) 831-3747**
**Counsel for Defendants/Appellees:**
      **Zurich American Insurance Company**
      **Midsouth Bank, N.A.**

**John H. Pucheu**
**Pucheu, Pucheu & Robinson, LLP**
**Post Office Box 1109**
**Eunice, Louisiana  70535-1109**
**(337) 457-9075**
**Counsel for Plaintiff/Appellant:**
      **Lou Ella Jason**

**KEATY, Judge.**

Plaintiff appeals the trial court's grant of summary judgment in favor of Defendants. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL HISTORY

This is a personal injury suit arising out of a trip and fall on a mat in the lobby of a bank. On January 26, 2017, Plaintiff, Lou Ella Jason, went to Midsouth Bank, N.A. located in Opelousas, Louisiana. Jason alleges that, upon exiting the bank, her left foot tripped on a bunched up or partially flipped area of the rug in the foyer causing her to fall. Jason contends that, as a result, she sustained bodily injuries.

On January 25, 2018, Jason filed suit against Midsouth Bank, N.A and its insurer, Zurich American Insurance Company. On May 28, 2019, Midsouth and Zurich (hereinafter collectively referred to as "Defendants") filed a motion for summary judgment. On August 9, 2019, the trial court granted the motion for summary judgment in favor of Defendants in open court. This was confirmed in the trial court's written judgment on August 26, 2019. Jason filed the instant appeal from the trial court's judgment.

On appeal, Jason asserts one assignment of error as follows: "The court erred in granting Appellees' Motion for Summary Judgment because there are genuine issues of fact in dispute."

## STANDARD OF REVIEW

The standard of review utilized by an appellate court when reviewing a trial court's grant of a motion for summary judgment is de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate pursuant to La.Code Civ.P. art. 966. *Id.* The criteria enunciated in

La.Code Civ.P. art. 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id*. "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Brown v. Amar Oil Co*., 11-1631, p. 3 (La.App. 1 Cir. 11/8/12), 110 So.3d 1089, 1091, *writ denied*, 12-2678 (La. 2/8/13), 108 So.3d 87.

Louisiana Code of Civil Procedure Article 966(D)(1) explains the mover's burden of proof on summary judgments as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

### DISCUSSION

In her sole assignment of error, Jason contends that the trial court erred in granting Defendants' Motion for Summary Judgment because there are genuine issues of material fact in dispute.

The governing law in this case is La.Civ.Code art. 2317.1, which provides a negligence standard to things:

2

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

In order to prevail on a claim under La.Civ.Code art. 2317.1, a plaintiff must prove:

(1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof [of] any one of these elements, his/her claim fails.

*Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591, p. 4 (La.App. 3 Cir. 11/5/08), 997 So.2d 814, 817.

In support of its motion for summary judgment, Defendants provided affidavits from four Midsouth employees: Angela Olivier, Tonya Hidalgo, Shon Prochaska, and Ashley Burleigh. According to their affidavits, the employees were present at Midsouth's office in Opelousas on the day in question when Jason, a well-known customer, entered therein to conduct business. They revealed that Jason has been a customer for years and has entered the branch office many times before and after the incident. The employees acknowledged Jason has traversed the rug that is present in Midsouth's foyer without difficulty before and after the accident. They explained that there were no tears, holes, worn areas, or bunching of the rug that was present before, on the date of, or after the incident. The employees indicated that no other customers have ever complained of difficulty traversing the rug before or after the accident.

3

Olivier, Hidalgo, and Prochaska recalled that on the date of the incident when Jason entered the office, she appeared tired and weak. According to the employees' affidavits, Jason explained that she was not feeling well and had just been released from the hospital. Hidalgo and Prochaska remembered that Jason was walking in an unbalanced and unsteady way while conducting her business. Hidalgo and Prochaska witnessed Jason fall forward as she passed through the first of two sets of doors in the foyer which lead from the inside of the bank to its outside entrance. Hidalgo and Prochaska attested that Jason's fall is accurately depicted on Midsouth's surveillance video which Defendants also offered into evidence. Hidalgo and Prochaska noted that on the day in question, Jason traversed the rug without difficulty when she entered the building to conduct her business. Olivier, Hidalgo, and Burleigh, who came to Jason's aid after her fall, revealed that the rug did not have any tears, holes, worn areas, or bunching. Burleigh attested that prior to the incident, Midsouth retained A-1 Services, Inc., to install, service, and replace the rugs monthly, including the rug at issue.

In opposition to Defendants' motion for summary judgment, Jason's affidavit reveals that she has been Midsouth's customer for over ten years and has entered its Opelousas building approximately once a month to conduct business. She reviewed the surveillance video and agrees it depicts her walking through the foyer and "also shows the fall that was caused by the rug near the front door of the bank." She acknowledged that the video shows her walking slowly through the foyer which she attributes to her bad knees. Jason noted that her knee problems affect her walking speed but do not cause her to lose balance or fall down. She explained that she regularly walked in and out of the foyer doors without difficulty before and after the incident. On the date of the incident, Jason purportedly fell down because the rug caught her left foot, which caused her to lose her balance.

4

According to her affidavit, the fall was not related to her bad knees. Jason attested that the "edge of the rug was not flat" which she "believe[s] . . . can be seen in the surveillance video." She acknowledged that the video "does not clearly show exactly what caused [her] foot to catch on the rug but [her] memory is that the rug was not completely flat and that this" caused her to fall.

In their appellate brief, Defendants contend *Alexander v. Hancock Bank*, 16-662 (La.App. 4 Cir. 2/8/17), 212 So.3d 713, is factually similar to the instant matter. In *Alexander*, the plaintiff filed a personal injury suit against the bank and its supplier of a floor mat after she allegedly tripped and fell over the rubber edge of a mat in the bank's lobby. As a result, the plaintiff supposedly sustained head and knee injuries. The appellate court affirmed the trial court's grant of summary judgment in favor of the bank and its supplier. The appellate court found plaintiff failed to establish the existence of a defect required for her premises liability claim and explained:

> As noted at the outset of this opinion, Ms. Alexander alleges that she tripped and fell over a "wave" or "lip" in the rubber edge of the floor mat. Ms. Alexander, however, admits in her deposition that she did not notice the wave or lip in the mat until *after* she fell. Ms. Alexander traversed the same mat upon entering the bank and neither noticed the wave or lip nor had trouble entering the bank. During the brief time in which Ms. Alexander was present in the bank, no other patrons tripped or fell on the mat or had any issues with the mat. It was only *after* her fall that Ms. Alexander noticed the wave or lip and concluded that the wave or lip must have been the cause of her fall. Proof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a claim. *Todd v. State Through Social Services, Office of Community Services*, 96-3090, p. 16 (La. 9/9/97), 699 So.2d 35, 43. Ms. Alexander is unable to produce any evidence other than conclusory allegations in her pleadings and her own self-serving statements regarding the mat. Therefore, Ms. Alexander is unable to meet her burden of showing that a defect existed. Ms. Alexander is further unable to show that the mat created an unreasonably dangerous condition and that an unreasonably dangerous condition was the cause in fact of her fall. Absence of corroborating evidence means that there is no genuine issue of material fact. *King* [*v. Allen Court Apartments II*], 2015-0858[,] p. 10 [(La.App. 1 Cir. 12/23/15)], 185 So.3d [835,] 842.

5

Thus, the trial court's grant of the defendants' motions for summary judgment was appropriate.

*Alexander*, 212 So.3d at 718.

We agree that *Alexander* is factually similar. Just like the plaintiff in *Alexander*, Jason alleges that she tripped and fell over a bunched up or partially flipped area of the rug. Similar to the plaintiff in *Alexander*, Jason traversed the same rug upon entering Midsouth and did not notice the bunched up or partially flipped rug. Just like in *Alexander*, during the time in which Jason was present in the bank, there is no evidence indicating that other patrons tripped or fell on the rug. Both the plaintiff in *Alexander* and Jason contend a defect in the rug caused them to fall. Jason argues on appeal, however, that *Alexander* is not factually similar because there was no surveillance video whereas there is surveillance video in this case. Jason asserts that despite the video failing to show whether the rug was flat, her belief that the rug was not flat cannot be contradicted by any evidence such that summary judgment is inappropriate. We disagree.

On review, we note that Jason's affidavit merely states that she "believes" the rug caused her fall without factual support. As discussed in *Alexander* proof establishing only possibility, speculation, or unsupported probability fails to establish a claim. Jason cannot provide any evidence other than conclusory allegations in her pleadings and her own self-serving affidavit regarding the rug. Therefore, she cannot meet her burden of proving that a defect existed. Jason also cannot show that the rug created an unreasonably dangerous condition which caused her to fall. On the other hand, Defendants offered evidence showing the absence of a defective condition and causation. Thus, the trial court's grant of Defendants' motion for summary judgment was appropriate.

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed. All costs of this appeal are assessed against Lou Ella Jason.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.